IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,

   vs.                               Case No. 16-CR-083-WMC

BENJAMIN MCHUGH,

                Defendant.

---

**SENTENCING MEMORANDUM**

---

      Benjamin McHugh will appear before the Court for Sentencing on May 31, 2017. The advisory Guideline range, as set forth in the Amended Pre-Sentence Report ("PSR"), calls for 210-240 months of incarceration. *See* PSR ¶ 143. And while the advisory Guidelines are the "starting point and initial benchmark" for all sentences, a sentencing judge should not presume that a Guideline sentence is reasonable. *Gall v. United States,* 552 U.S. 38, 49-50,(2007); *see also Nelson v. United States*, 555 U.S. 350, 352 (2009). Instead, the Court must consider the Guideline recommendation in light of the other sentencing factors set forth in 18 U.S.C. § 3553(a), with the ultimate goal of imposing a sentence that is sufficient but not greater than necessary to comply with those factors. For the reasons set forth in this Sentencing Memorandum, Ben respectfully requests that the Court impose a sentence of ten years, based on the application of those sentencing factors.

    **I.**   **The Nature and Circumstances of the Offense.**

This case, like any involving the distribution or production of child pornography, includes many troubling aspects. But defining the scope of Ben's transgressions is important, as it helps to distinguish this offense in several meaningful ways from the standard case. Here, the aggravating aspects of this offense are accounted for through Guideline enhancements. Conversely, there are a number of mitigating factors that the Guideline does not adequately capture.

First, the number of images produced and distributed by Ben is mitigating. The PSR notes that there were a total of 14 images of the victim that he distributed to Seth Foerster. *See* Amended PSR ¶ 19. Most of these images were of one or both girls fully clothed, or in several instances with part of their underwear exposed. Only three of the images actually contained nudity. *See id.* ¶ 34.

Second, the nature of these photos are mitigating, at least as compared to the typical image of child pornography. The photos are largely unremarkable. Although taken on two different occasions, the photos depict similar situations; a woman helping to bathe two children. She sits with her back to the camera almost entirely blocking the view of the younger child, while the older child stands and is visible. The photos are all taken from a distance (the hallway outside the bathroom) and, while one of the children's genitalia is visible, the quality of the images is poor. The photos, absent admissions from Ben and Seth Foerster that they were intended to arouse sexual interest, likely would not be considered child pornography. *See United States v. Russell*, 662 F.3d 831, 844 (7th Cir. 2011) (noting that the photographer's state of mind can inform an assessment of whether a photo mere depicts nudity, or instead the "lascivious exhibition of the genitals"). Assuming a spectrum exists whereby images of child pornography can be

categorized from least to most offensive, these images belong at the bottom of that spectrum.

Finally, while Ben did distribute these images to Seth Foerster, there is no indication that the images were distributed to anyone else. *See* PSR ¶ 45, 46. Courts often point out, rightly so, that a child portrayed in a pornographic image is victimized each time the photo is distributed to a new user. *See United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012) (quoting *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 250, 122 S. Ct. 1389 (2002)) (noting "every publication of the image 'would cause new injury to the child's reputation and emotional well-being.'"). The fact that the images were not further distributed saves the child from having to "go through life knowing that the recording is circulating within the mass distribution system for child pornography." *New York v. Ferber*, 458 U.S. 747, 759 n.10, 102 S.Ct. 3348 (1982). Thus, the actual harm in this case is mitigated in a meaningful way.

Taken together, Ben produced three images that, while child pornography, were substantially less aggravated than most of the images that are involved in these types of cases. Nor were these images distributed to the Internet at large, where they would remain in perpetuity. The advisory Guideline fails to account for these mitigating factors and thus overstates the appropriate sentence.

**II. The History and Characteristics of the Defendant.**

Measuring the character of a man who has committed a serious offense is challenging. The rotten odor of his crime can overpower a lifetime of good deeds. But careful and reasoned consideration of Ben Mchugh shows he is no monster. Instead, he is by-and-large a man of good character and good deeds.

For nearly ten years prior to his arrest, Ben worked as a garbage man, driving for Eagle Waste and Recycling. *See* PSR ¶ 134. By all accounts Ben was a hard and reliable worker, averaging nearly 60 hours per week. The owner of the company commented that he was "one of the best drivers ever employed." *Id.* And while the work was not glamorous, it was enough to support a family. Despite long hours on the job, Ben found time to volunteer in the community as well, through his membership with the Knights of Columbus. *Id.* ¶ 116. He was active in his church and, as noted by a number of the letters submitted in his support, was quick to offer assistance to a friend or family member who needed help cutting the grass or painting a house. Finally, notwithstanding the current offense, he was a good father. The little free time he had was spent with his daughters, fishing, camping, or simply hanging-out with them on Sundays, a dedicated "family day" in the McHugh household. *Id.* ¶¶ 113, 111. Working hard, providing for his family, and being a good community member and neighbor are all real, and positive things that Ben Mchugh has done with his life. They should count in determining an appropriate sentence.

Of course, these good deeds do not tell the whole story. Ben is also a pedophile. It is an affliction he has struggled with since his teens. And, as described in the PSR, he has failed in this struggle on repeated occasions. *Id*. ¶¶ 41, 63. But the fact that he has *struggled* ought to matter. Ben and his wife instituted safety precautions—namely having Ben avoid bathing or changing the children—to ensure that he did not have any inappropriate contact with them. *Id.* ¶ 62. He would go long periods of time without viewing any child pornography, only to "relapse," download a number of images, then later delete them in shame. *Id.* ¶¶ 41, 50. Knowing that Seth Foerster was his source, he

4

went so far as to move his family four hours away, in large part to separate himself from that temptation. *Id.* ¶ 46. Of course, none of these steps fully worked. But unlike many other child pornography offenders—including Seth Foerster—who seem to embrace their sexual desires by actively seeking out and stockpiling child pornography, Ben's involvement was more tortured. The fact that he has never fully adopted his sexual desires speaks to his want for change. It certainly suggests an openness and amenability to treatment, which he has already started, albeit in a self-guided fashion, while in pre-trial confinement. *Id.* ¶ 126.

### III. The Need for the Sentence to Reflect the Policies Outlined in 18 U.S.C. § 3553(a)2.

At the forefront of every criminal sentence is the need to ensure the public is adequately protected. In Ben's case, the risk he poses is easy to pinpoint. He needs to take steps to ensure that he can manage any inappropriate sexual urges and avoid having any access to child pornography. A ten-year period of confinement, followed by a period of supervised release with appropriate conditions adequately addresses this sentencing factor. It will provide him with sufficient time to complete any and all Sex Offender Treatment offered by the Bureau of Prisons. And any risk of Ben reoffending after his release will be significantly reduced by the close monitoring of his Internet activity and interactions with minors, both of which will be conditions of his supervised release. There is no need for a longer period of confinement to provide security for the community.

Similarly, a ten-year sentence will adequately address the severity of this offense and promote respect for the law. To this point, not all prison sentences are created equally, even when they are of the same length. In Ben's case, prior to his arrest, he had

never spent so much as an hour in police custody. Certainly the burden of a lengthy prison sentence on Ben, a true novice within the criminal justice system, is greater than on someone with previous criminal experience.

More importantly, prison is not the only form of punishment that Ben will suffer. All crimes carry collateral consequences, but it is difficult to think a more punishing set of consequences than those that Ben will endure because of his actions. Once he serves his period of confinement, he will be subject to a lengthy period of supervised release, where his rules will be more restrictive than those applicable to nearly any other type of offender. Worse, he will have to confront the fact that he ruined the good life that he worked to create for himself and his family. Unlike some offenders, who are able to serve their time with the hope of returning to at least some semblance of the life they left behind, Ben will enjoy no such luxury. Instead, he will have to confront the fact that his actions destroyed the life he and his family previously enjoyed. He will spend his entire term of confinement knowing that he has a son whom he has never met. The wreckage he caused is a real and weighty punishment he will live with well beyond any period of confinement, and should factor into a calculus of what prison sentence adequately captures the severity of his offense.

**IV.     Sufficient but not greater than necessary.**

There is no dispute that Ben deserves a significant prison sentence. But the advisory Guideline in this case overstates the length of confinement necessary. It fails to account for the nuance in the nature and number of images involved, and it fails to accurately capture the large part of Ben's life that was pro-social. With due consideration

6

to these factors, a sentence of ten years is sufficient, but not greater than necessary to serve the ends of justice, as set forth in § 3553(a), in this case.

### III. CONCLUSION.

For the reasons stated above, the Court should impose a sentence of ten years in prison.

Dated at Madison, Wisconsin, May 26, 2017.

                              Respectfully submitted,
                              BENJAMIN MCHUGH, Defendant
                              Nathan T. Otis
                              Nicholson, Gansner & Otis, S.C.
                              22 E. Mifflin St., Suite 90
                              Madison, Wisconsin 53703
                              (608) 237-6854 (Phone)
                              (608) 819-8273 (Fax)

BY: _____/s/_____
            NATHAN T. OTIS
            (State Bar #1079832)